607 So.2d 1184 (1992)
Robert Lee WALLACE, Jr.
v.
The STATE of Mississippi.
No. 90-KA-258.
Supreme Court of Mississippi.
September 10, 1992.
As Corrected October 29, 1992.
*1185 Polly J. Covington, Quitman, for appellant.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and McRAE, JJ.
McRAE, Justice, for the Court:
Appellant Robert Wallace pleaded guilty in the Circuit Court of Clarke County to multiple felony and misdemeanor charges *1186 of forgery and uttering bad checks. The Circuit Court conditionally dismissed the charges. Upon later finding that Wallace had violated the conditions of the dismissal, the court sentenced him to a total of forty-nine and one-half years imprisonment. Wallace appeals, bringing before us the following issues:
I. Did the trial court err by sentencing Wallace to forty-nine and one-half years imprisonment upon finding that Wallace had violated a plea agreement which provided that the charges would be dismissed following restitution and three years of good behavior?
II. Does the sentence constitute disproportionate, cruel, and unusual punishment in relation to the crimes committed?
III. Did the trial court abuse its discretion by denying Wallace's motion for a continuance and by ruling that Wallace had violated the dismissal conditions where Wallace had not yet been tried for the crime constituting the violation?
IV. Did the trial court abuse its discretion in refusing to afford Wallace a separate hearing on mitigating circumstances prior to sentencing?
Finding no reversible error, we affirm.

FACTS
In October, 1988, Wallace was indicted on four counts of uttering a forgery, one felony bad check count, and nine misdemeanor bad check counts. The record indicates that he had written fourteen bad checks totaling $822.00. Four of these were forgeries written on another's account.
Pursuant to a plea bargain, Wallace agreed to plead guilty in exchange for a recommendation by the prosecution that Wallace's case be handled pursuant to Miss. Code Ann. § 99-15-26 (1972). Section 99-15-26 empowers a court to postpone the acceptance of a plea and the imposition of a sentence and to eventually dismiss the charges upon a first-time offender's successful completion of certain conditions. On June 13, 1989, the Circuit Court of Clarke County accepted the prosecutor's recommendation and agreed to dismiss the charges on condition that Wallace first make restitution and violate no law for three years.
Three months later, on September 19, 1989, the prosecutor filed a petition to adjudicate Wallace guilty of the fourteen bad check and fraud charges. The petition alleged that Wallace had violated the conditions of dismissal by committing the crimes of armed robbery and grand larceny of an automobile. At a February 7, 1990, hearing on the petition, the prosecution produced evidence that on the night of August 28, 1989, Wallace had stolen about $50.00 in cash and a pickup truck from one Russ Oswalt by threatening to kill him with a knife. The evidence included testimony by two policemen who investigated the case, testimony by Russ Oswalt, the victim, and a confession signed by Wallace.
Upon finding that Wallace had committed the crime, the court adjudicated Wallace guilty of the original fourteen bad check and fraud charges and sentenced him to a total of forty-nine and one-half years imprisonment. Most components of the sentence were set to be served concurrently, leaving Wallace with a net prison term of sixteen years. On February 14, Wallace filed a motion for resentencing in which he argued that the sentence was disproportionate to the crimes he committed and that the maximum should be three years. He also contended that the court should have afforded him a separate sentencing hearing. The court denied the motion.

LAW

I. DID THE TRIAL COURT ERR BY SENTENCING WALLACE TO FORTY-NINE AND ONE-HALF YEARS IMPRISONMENT UPON FINDING THAT WALLACE HAD VIOLATED A PLEA AGREEMENT WHICH PROVIDED THAT THE CHARGES WOULD BE DISMISSED FOLLOWING RESTITUTION AND THREE YEARS OF GOOD BEHAVIOR?
Wallace argues that since the plea bargain required him to "go straight" for *1187 only three years as a condition of dismissal, then the maximum sentence he should receive upon violating the conditions of dismissal would be three years. As Wallace states in his brief:
The recommendation of the District Attorney of three years probation, and its acceptance by the defendant in exchange for a guilty plea were well considered. If the defendant did not "go straight" and make restitution for the monetary amounts, then logically 3 years probation would be converted to 3 years to serve with the Department of Corrections.
Wallace relies on Brown v. State, 533 So.2d 1118 (Miss. 1988), cert. denied, 489 U.S. 1097, 109 S.Ct. 1570, 103 L.Ed.2d 936 (1989), a case in which a defendant's guilty plea was held in abeyance for four years under § 99-15-26 on condition of good behavior. Upon finding that the defendant had committed other crimes during the four-year period, the circuit court adjudicated him guilty of the original crime and sentenced him to four years imprisonment. In his order, the judge stated:
The defendant was put under probation. He violated the terms of it. His original bargain was for four years pending good behavior. I am convinced that by being convicted, it wasn't good behavior, therefore, he ought to be committed to serve the four years that he originally bargained for. That will be the order of the court.
Brown, 533 So.2d at 1122. This Court affirmed the conviction and sentence. Wallace contends that under Brown, a defendant who violates the terms of his § 99-15-26 "probation" cannot be sentenced to a term exceeding the conditional good-behavior period for which he "bargained."
Wallace's argument is insupportable. In § 99-15-26 proceedings, the trial court never accepts the guilty plea and never imposes a sentence if the defendant fulfills the court-imposed conditions. Where a guilty plea is accepted and a suspended sentence is imposed, the court cannot later impose a period of incarceration exceeding the original suspended sentence where the defendant fails to maintain a standard of good behavior. To do so would expose the defendant to double jeopardy. See Leonard v. State, 271 So.2d 445 (Miss. 1973) ("[O]nce a ... court exercises its option to impose a definite sentence it cannot subsequently set that sentence aside and impose a greater sentence."). In the instant case, the court's imposition of a forty-nine and a half year sentence was not an extension of a preexisting sentence. Indeed, Wallace could not have been sentenced prior to February 9, 1990 (the date on which the forty-nine and a half year sentence was imposed), because he had never been adjudged guilty before that date. Consequently, the three-year period of conditional good behavior did not amount to a sentencing ceiling for double jeopardy purposes, and the trial judge was not fettered by prior rulings when he sentenced Wallace.
Wallace's contention that his forty-nine and one-half year sentence constitutes a violation of his plea bargain is likewise meritless. The record does not show that Wallace ever bargained for a three year maximum sentence. What he bargained for was a conditional dismissal under § 99-15-26. Nothing in the record, including Wallace's petition to enter a guilty plea, refers to any agreement concerning what sentence should be imposed if Wallace were to violate the conditions of dismissal. It may well be that the prosecutor agreed, in exchange for Wallace's guilty plea, to seek an order in which the charges against Wallace would be dismissed after no more than three years, provided that Wallace broke no laws. If so, the agreement was fully carried out: Wallace pleaded guilty; a three-year conditional period was imposed by the trial court. The agreement had no bearing on what sentence the court could impose if Wallace violated the conditions of dismissal.
It is true, as Wallace stresses, that the defendant in Brown was sentenced to serve a term of imprisonment equal to the period of conditional good behavior originally imposed. Nothing in the Brown opinion, however, indicates that the trial court in Brown could not have imposed a longer sentence had it deemed four years insufficient. *1188 Wallace's reliance on Brown is therefore misplaced.
The assignment of error has no merit.

II. DOES THE SENTENCE CONSTITUTE DISPROPORTIONATE, CRUEL, AND UNUSUAL PUNISHMENT IN RELATION TO THE CRIMES COMMITTED?
Wallace contests four elements of his sentence on grounds of disproportionality: a fourteen-year sentence for forging and publishing a $40.00 check, a two-year consecutive sentence for forging a $50.00 check, and two fourteen-year sentences for forging and publishing checks in the amount of $54.00 and $62.00. The second and third fourteen-year sentences run concurrently with the first. He does not contest his other ten convictions, nine of which were misdemeanors.
As a general rule, sentencing is purely a matter of trial court discretion so long as the sentence imposed lies within the statutory limits. Fleming v. State, 604 So.2d 280, 302 (1992); Corley v. State, 536 So.2d 1314, 1319 (Miss. 1988); Reed v. State, 536 So.2d 1336 (Miss. 1988). Where a sentence is "grossly disproportionate" to the crime committed, however, the sentence is subject to attack on grounds that it violates the Eight Amendment prohibition against cruel and unusual punishment. Fleming, 604 So.2d at 302; Davis v. State, 510 So.2d 794, 797 (Miss. 1987).
In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court articulated a three-prong test for evaluating proportionality. The elements include:
(1) the gravity of the offense and the harshness of the penalty;
(2) comparison of the sentence with sentences imposed on other criminals in the same jurisdiction; and
(3) comparison of sentences imposed in other jurisdictions for commission of the same crime with the sentence imposed in this case.
This Court has adopted the Solem criteria. See Fleming, 604 So.2d at 302-03; Presley v. State, 474 So.2d 612 (Miss. 1985).
The first prong involves a comparison of the severity of the sentence to the seriousness of the crime. Attempting to show that the disparity prong weighs in his favor, Wallace points to Clowers v. State, 522 So.2d 762 (Miss. 1988). In Clowers, the defendant was convicted of forging one $250.00 check. Being an habitual offender, the defendant was subject to the mandatory maximum sentence of fifteen years without parole. The trial court imposed a sentence of less than fifteen years on grounds that the mandatory maximum sentence would be disproportionate to the crime. On cross-appeal, this Court affirmed.
Clowers is readily distinguishable from the instant case. The mandatory sentence in Clowers would have imposed a fifteen-year sentence on Clowers for a single forged check. In the present case, since most of Wallace's sentences run concurrently, he is actually serving a net term of sixteen years for four separate forgery convictions, not to mention the ten other convictions whose sentences also run during the sixteen year period. Further, Wallace is potentially eligible for parole while Clowers, sentenced as an habitual offender, would not have been. It is also noteworthy that the Court in Clowers carefully explained that it was establishing no litmus test for proportionality and noted that "outside the context of capital punishment, successful challenges to the proportionality of a particular sentence will be exceedingly rare." Clowers, 522 So.2d at 765 (quoting Solem, 463 U.S. at 289-90, 103 S.Ct. at 3009) (emphasis in original).
This Court reemphasized the limited reach of Clowers in Barnwell v. State, 567 So.2d 215 (Miss. 1990), by stating that "Clowers, by its own statement, is limited to its own distinctive facts and procedural posture." Barnwell, 567 So.2d at 221. In Barnwell, the defendant was sentenced as an habitual offender to fifteen years imprisonment without parole for uttering a single $500.00 forged check. This Court *1189 held that the sentence was not so disproportionate to the crime as to require reversal.
The circumstances of the instant case are more akin to those found in Barnwell than to those found in Clowers. The relative magnitude of Wallace's crimes and sentences does not require reversal under the first prong of the Solem test.
The record contains little data regarding the second and third prongs. With respect to sentences imposed on other criminals in the same jurisdiction, Wallace attaches an addendum to his brief that sets out the sentences imposed in eighteen Clarke County cases involving false pretense or forgery. The cases variously date from 1985 to 1990. Details are skimpy, and the relation between number and magnitude of crimes on one hand and the severity of sentences on the other is not readily apparent. In any event, Wallace did not introduce this list into evidence below; consequently, this Court has no way to verify its accuracy. In Mason v. State, 440 So.2d 318 (Miss. 1983), the Court stated:
We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.
Mason, 440 at 319. Wallace's list of sentences imposed in the same jurisdiction, not having endured the testing fires of an evidentiary hearing, are useless to this Court.
Wallace produced no facts either here or before the lower court concerning sentences imposed in other jurisdictions. In the complete absence of facts showing that Wallace's sentence exceeds others imposed for the same crime in either the same or other jurisdictions, it is impossible for this Court to hold that the second and third prongs of the Solem test favor reversal of Wallace's sentence.
While Wallace's sentence seems rather severe, it is not so "grossly disproportionate," as to violate the Eight Amendment to the United States Constitution.

III. DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING WALLACE'S MOTION FOR A CONTINUANCE AND BY RULING THAT WALLACE HAD VIOLATED THE DISMISSAL CONDITIONS WHERE WALLACE HAD NOT YET BEEN TRIED FOR THE CRIME CONSTITUTING THE VIOLATION?
Wallace moved for a continuance at the February 7, 1990, hearing on the state's petition to adjudicate guilt. As grounds for his motion, Wallace asserted that the court should not consider whether the armed robbery and grand larceny charges constituted violations of the dismissal conditions until Wallace had been tried for the alleged crimes. The court denied the motion and, after hearing evidence, found that Wallace had more likely than not violated the dismissal conditions. Wallace contends on appeal that the lower court erred in not granting the continuance and that, in any event, the court should not have found that he had violated the dismissal conditions until his guilt of the alleged crimes had been proven beyond a reasonable doubt.
In order to be convicted of a crime, a defendant must be proven guilty beyond a reasonable doubt. The issue Wallace raises here turns on whether a court may employ a lesser standard of proof in determining whether a defendant has violated the conditions of a dismissal under § 99-15-26.
The revocation of a conditional dismissal under § 99-15-26 is closely analogous to a revocation of parole or probation. In Moore v. Ruth, 556 So.2d 1059 (Miss. 1990), this Court held that a court may employ a lesser standard than "proof beyond a reasonable doubt" when revoking parole. A § 99-15-26 conditional dismissal, like parole, is a matter of legislative grace. It is granted in the first instance at the discretion of the court, and there appears to be no principled reason why it may *1190 not, like parole, be revoked upon a showing that the defendant has more likely than not violated the terms thereof. The record certainly contains sufficient evidence to support the lower court's revocation of Wallace's conditional dismissal.[1]
Since the lower court was entitled to revoke Wallace's conditional dismissal based on a lesser standard than proof beyond a reasonable doubt, there was no reason to delay a revocation hearing until Wallace had been tried on the armed robbery and grand larceny charges. The parallel between the revocation of a conditional revocation and revocation of parol is also pertinent here. The Court in Moore expressly held that
[o]bviously, commission of a felony while on parole is grounds for revocation, ... [cite omitted], nor is it necessary that parole authorities await the principal trial before commencing proceedings to have the parole revoked.

Moore, 556 So.2d at 1061 (emphasis added).
If the revocation of Wallace's conditional dismissal had required the equivalent of a full-blown trial on the issue of whether Wallace was guilty of the alleged violations, then the interests of judicial economy would perhaps have been best served by granting Wallace's motion for a continuance. However, the analogy to Moore establishes that the revocation of a conditional dismissal does not require a hearing on so grand a scale. In any event, the decision to grant or deny a continuance is one left to the sound discretion of the trial court. Morris v. State, 595 So.2d 840, 844 (Miss. 1991); Fisher v. State, 532 So.2d 992, 998 (Miss. 1988); Lambert v. State, 518 So.2d 621, 623 (Miss. 1987). The court below did not abuse its discretion in denying Wallace's motion for a continuance, nor did it employ an improper standard of proof in finding that Wallace had violated the court-imposed conditions for dismissing the bad check and fraud charges.

IV. DID THE TRIAL COURT ABUSE ITS DISCRETION IN REFUSING TO AFFORD WALLACE A SEPARATE HEARING ON MITIGATING CIRCUMSTANCES PRIOR TO SENTENCING?
On February 14, 1990, five days after the court ordered his sentence, Wallace moved for resentencing on grounds that the court should have granted him a sentencing hearing separate and apart from the hearing at which his guilt was adjudicated. The court denied the motion, and Wallace argues here that the lower court erred in so doing.
As the state is quick to point out, Wallace never asked for a separate sentencing hearing prior to being sentenced. In Keyes v. State, 549 So.2d 949, 951 (Miss. 1989), this Court held that "defendant's failure at the time of sentencing to request a separate hearing would preclude his now raising the point, even if it had substantive merit." The same rule applies here, therefore, Wallace's claim is procedurally barred.
Further, the claim has no merit. Wallace relies heavily on Rules 6.02 through 6.04 of the Uniform Criminal Rules of Circuit Court Practice. Rule 6.02 permits the trial court to require a "presentence investigation and report;" Rule 6.03 permits separate sentencing hearings; Rule 6.04(3) addresses sentencing hearings in the context of guilty pleas. According to Wallace, the lower court abridged the rules by not requiring a presentence investigation and by failing to order a separate hearing at which the results of such investigation could be presented.
Wallace neglects to note that Rules 6.02 and 6.03 are both phrased permissively. Rule 6.02 provides that "the court may direct the presentence investigator to make a presentence investigation and report; Rule 6.03 states that "[i]f there be a bifurcated hearing" the results of a presentence report should be disclosed. There is nothing to indicate that the lower court abused *1191 its discretion by not requiring a presentence investigation and separate sentencing hearing. Wallace points to Presley v. State, 474 So.2d 612 (Miss. 1985), a case where this Court reversed the appellant's sentence and remanded for a more intensive pre-sentencing hearing. Presley, however, had been sentenced as an habitual offender to forty years without possibility of parole. The instant case does not involve an habitual offender sentence, and Wallace's sentence is substantially less onerous than was Presley's. Thus, Presley has little if any application here.
Wallace also insists that Rule 6.04 requires a court to conduct a separate sentencing hearing upon accepting a guilty plea. This Court disposed of a similar argument in Keyes:
[W]here the defendant enters a plea of guilty, nothing in [Rule 6.04(3)] mandates a separate hearing. The rule provides only that, after entry of the plea, "a hearing ... will then be conducted."
* * * * * *
Where the defendant pleads not guilty and goes to trial, the reason for a separate hearing is to preclude jury knowledge of prior convictions, except as otherwise admissible. See Rule 609, Miss. R.Ev. This reason does not obtain at sentencing, for the law strongly encourages, if it does not direct, the sentencing judge to become wholly familiar with the defendant's prior record before passing sentence.... That ... [the defendant was sentenced] at the same hearing where his guilty plea was accepted rather than at a separate hearing is of no moment.
Keyes, 549 So.2d at 951 (emphasis in original).
Clearly, neither the caselaw nor the Rules of Criminal Procedure support Wallace's contention that he was entitled to present evidence of mitigating circumstances at a separate sentencing hearing. The lower court did not abuse its discretion by denying Wallace's motion for resentencing.

CONCLUSION
1. The sentence imposed by the lower court is compatible with Miss. Code Ann. § 99-15-26 and with the plea bargain upon which Wallace and the prosecution agreed.
2. The sentence, though severe, is not so "grossly disproportionate" as to violate the Eighth Amendment ban on cruel and unusual punishment.
3. Violations of a conditional dismissal under § 99-15-26 need not be proven beyond a reasonable doubt, so the lower court did not err in denying Wallace's motion to postpone acceptance of his guilty plea until Wallace had been tried for the crimes constituting the violations.
4. Wallace's claim that he should have been afforded a separate sentencing hearing is procedurally barred.
5. Finding no reversible error, we affirm.
CONVICTION FOR UTTERING FORGERY AND SENTENCES IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS FOLLOWS:
COUNT I: FOURTEEN (14) YEARS; COUNT II: TWO (2) YEARS, TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I; COUNT III: FOURTEEN (14) YEARS, TO RUN CONCURRENTLY TO THE SENTENCES IN COUNT I AND II; COUNT V: FOURTEEN (14) YEARS TO RUN CONCURRENT TO COUNTS I AND II; COUNT XI: ONE (1) YEAR TO RUN CONCURRENT TO COUNTS I AND II; COUNTS IV, VI-X, AND XII-XIV: SIX (6) MONTHS EACH, ALL TO RUN CONCURRENT TO COUNTS I AND II; FINE OF $1,000.00, PLUS COURT COSTS, ATTORNEY'S FEES AND RESTITUTION;
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and SULLIVAN, PITTMAN and BANKS, JJ., concur.
*1192 DAN M. LEE, P.J., concurs with parts I, II, and IV, and dissents to part III without written opinion.
NOTES
[1] Wallace concedes in his reply brief that he was eventually convicted and sentenced on the armed robbery and grand larceny charges.